**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOUGLAS LYNN BECK,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:26-1958** |
| **v.** | : | **(JUDGE MANNION)** |
| **SGT. BOOTH, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court are *pro se* Plaintiff Douglas Lynn Beck ("Beck")'s application for leave to proceed *in forma pauperis* ("IFP Application") and complaint in which he asserts claims under 42 U.S.C. §1983 for violations of his constitutional rights against one state correctional officer who allegedly retaliated against him by spraying him with OC spray, another state correctional officer who allegedly failed to conduct a proper investigation into the other officer's use of the OC spray, and the correctional institution's superintendent. For the reasons stated below, the Court will: (1) grant the IFP Application and allow Beck leave to proceed *in forma pauperis* in this case; (2) dismiss his Section 1983 claim against the superintendent without prejudice to him filing an amended complaint to the extent he can assert a cognizable claim against her; and (3) dismiss his Section 1983 claim

against the correctional officer who allegedly failed to conduct an adequate investigation.

## I. BACKGROUND

Beck, a convicted and sentenced state prisoner who is currently incarcerated at Pennsylvania State Correctional Institution Camp Hill ("SCI Camp Hill"), commenced this action by filing his complaint, his IFP Application, and a prisoner trust fund account statement, all of which the Clerk of Court docketed on July 14, 2026. (Docs. 1–3.) Because Beck did not submit a certified account statement as required by the *in forma pauperis* statute, *see* 28 U.S.C. §1915(a)(2) ("A prisoner seeking to bring a civil action . . . without prepayment of fees or security therefor . . . shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . ., obtained from the appropriate official of each prison at which the prisoner is or was confined."), an Administrative Order issued requiring the Superintendent of SCI Camp Hill to submit Beck's certified account statement to the Clerk of Court. (Doc. 5.) The Clerk of Court docketed Beck's certified account statement on July 29, 2026. (Doc. 7.)

In his complaint, Beck names as Defendants: (1) Sgt. Booth ("Booth"), a correctional officer at SCI Camp Hill; (2) Security Lieutenant Rose ("Rose"),

also a correctional officer at SCI Camp Hill; and (3) Lindsey Kendall ("Kendall"), the Superintendent of SCI Camp Hill. *See* (Doc. 1 at 1, 2–3). As for Beck's factual allegations and legal claims, he alleges that Booth started working on his cell block (L Block) in November 2025. *See* (*id.* at 4). On November 26, 2025, Beck wrote a letter to non-Defendant Deputy Albert regarding Booth's "behavior." (*Id.* at 4, 5 (cleaned up)). Beck's letter stated:

> This is to inform you of a situation with Sgt. Booth on L Block.
>
> He has been doing [sic] very aggressive cell searches under the guise of cell tap inspections.
>
> I won't go into what he does because I'm sure you can imagine. All of this is in direct violation of cell tap/search policy.
>
> But what you need to know is there is more than a few young gang bangers talking about letting the air out of him. (Stabbing if you don't know.)
>
> I pray this doesn't happen, and I try to talk rationally to them, but I don't know how much good it does.
>
> I'm sending a copy of this out so when this happens no one can say y'all didn't know.
>
> I will also speak to L/M Bilous today about this.

(*Id.* at 11 (cleaned up)). As a result of this letter, Booth "was reprimanded for his behavior on L Block." (*Id.* at 4, 5 (cleaned up)).

On December 12, 2025, Beck and the other inmates on his block were ordered to return to their cells. *See* (*id.* at 5). While Beck was complying with

this order, Booth "pursued" him and "assaulted" him with OC Spray from approximately fifteen to twenty feet from behind Beck. *See* (*id.* (cleaned up)). Beck asserts that there is a video recording of the entire incident, which "supports [his] claim 100%." (*Id.* (cleaned up)).

Following this incident, Rose investigated (via Investigation No. 2025-A-1207) Beck's claim regarding Booth's alleged abuse and use of excessive force. *See* (*id.* at 6). During this investigation, Rose viewed the video of the incident, which Beck alleges "clearly shows . . . Beck complying with [the] order for everyone to go to their cells" only to have Booth deploy his OC Spray "from 15' – 20' behind . . . Beck" and hit Beck with the spray. (*Id.* at 7 (cleaned up)). Beck asserts that Booth's use of the OC Spray violated the Commonwealth of Pennsylvania Department of Corrections' use-of-force policy because "at no time did . . . Beck pose any threat to . . . Booth, himself, others, or property, nor was the use of force necessary to restore order." (*Id.* (cleaned up)). Yet, Rose "still chose to make the fraudulent claim that . . . Beck's allegations were . . . unfounded." (*Id.* (cleaned up)). Because Rose conducted a "sham investigation," Beck asserts that Rose violated his "Fourteenth Amendment right to due process and furthered the retaliation against . . . Beck, violating his First Amendment rights." (*Id.* (cleaned up)).

Beck also submitted a grievance dated January 2, 2026, pertaining to Booth's use of the OC Spray. (*Id.* at 9.) Beck's grievance described the events at issue as follows:

> This grievance is to address the attack/assault that I suffered at the hands of Sgt. Booth on 12-12-25 while housed on LA Block.
>
> Facts of this grievance: (1) Sgt. Booth started on L Block in November 2025. He was very aggressive in everything he did. (2) I wrote a letter to Deputy Albert about Sgt. Booth's behavior on November 26, 2025. (3) A week or so later Sgt. Booth was reprimanded by his superiors. Guys heard it all over the block (not myself). (4) On 12-12-25, I was standing by the phones waiting for my 5:30 call. Sgt. Booth started yelling like a maniac for everyone to take it in. I was complying and asked for a grievance. I was halfway up the stairs when Sgt. Booth said: Write something else and see what happens to you! I stopped and said: So now you're threatening me? You'll read about that shit too! He started toward me. I got to the top of the stairs, and he was about halfway up when he stopped his spray. I laughed at him and said: Isn't that the stupid ass behavior that they just chewed your ass for?
>
> He got his spray and came upstairs. I was 15-20 ft. away from him headed for my cell. I said: The way you're acting, I need a lieutenant. As I looked over my right shoulder, he sprayed me. I walked into my cell and put my head in my sink. His actions were egregiously abusive, retaliatory and in direct violation of use of force policy. I posed no threat to him, others, myself or property. I reserve the right to amend this grievance at any time during the process of exhausting my administrative remedies.
>
> As of right now, medical has not seen me for the damage to my right ear, and I just started medication attempting to clear up my vision in my right eye. At this point I don't know what my compensatory damages will be or my punitive ask will be. Relief I can ask for now is my medical issues to be address [sic] immediately. Second to be moved back to LA Block where I feel

> safer around guys I know while I'm dealing with my diminished sight and hearing. For all video of this incident to be preserved, place LA Block time 5:00 p.m. until after 9:00 p.m. and all video of myself for the rest of the night going to medical and R.H.U. For Sgt. Booth to not ever be allowed on my block. For any and all retaliation from any staff to cease immediately.
>
> My family is in the process of retaining me an attorney. However, I am open to listening to any honest and serious negotiation in an attempt to resolve this matter.

(*Id.* at 10 (cleaned up)).

Beck asserts that due to Booth's deployment of the OC Spray, he has blurry vision in his right eye, he sustained damage to the lens of his eye which required medication for months, he had/has ringing in his right ear which caused vertigo and also required medication for months, and he suffers from anxiety and fear of more retaliation and assaults. *See* (*id.* at 8). He also asserts Section 1983 First Amendment retaliation and Eighth Amendment excessive force claims against Booth as well as Section 1983 First Amendment retaliation and Fourteenth Amendment due process claims against Rose. *See* (*id.* at 6–7). For relief, Beck seeks nominal, compensatory, and punitive damages. *See* (*id.* at 8).

## II. LEGAL STANDARDS

### A. Applications for Leave to Proceed *in Forma Pauperis*

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil] suit, . . . without prepayment of fees or

security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[1] *Id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris*, 293 F. App'x at 131–32.

### B. Screening Complaints Under 28 U.S.C. §§1915A and 1915(e)(2)

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening

[1] "The reference to prisoners in §1915(a)(1) appears to be a mistake. *In forma pauperis status* is afforded to all indigent persons, not just prisoners." *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

obligation regarding actions filed by individuals proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

(internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**C. Section 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show

that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. The IFP Application

After reviewing the IFP Application, it appears that Beck lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Beck to proceed *in forma pauperis* in this action.[2]

### B. Screening of Beck's Complaint

After screening Beck's complaint, the Court finds that he pleads plausible First Amendment retaliation and Eighth Amendment excessive force claims against Booth. On the other hand, the Court will dismiss Beck's Section 1983 claims against Rose and Kendall because he fails to plead a plausible Section 1983 claim against either Defendant.

#### 1. Claim Against Kendall

Although Beck names Kendall as a Defendant in the caption and body of his complaint, *see* (Doc. 1 at 1, 3), he neither includes any factual

[2] However, because Beck is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome. *See* 28 U.S.C. §1915(b).

allegations describing her role in any alleged constitutional violation nor identifies his legal claim against her in his complaint. *See* (*id.* at 4–8). Thus, he fails to plead a plausible Section 1983 claim against Kendall because he does not allege her personal involvement in any constitutional violation.

A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation:

> In the § 1983 context, . . . the Supreme Court . . . require[s] a "showing of direct responsibility" by the named defendant and . . . eschew[s] any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights," *Rizzo v. Goode*, 423 U.S. 362, 376–77 [(1976)]—including theories of vicarious or respondeat superior liability, *see* [*Iqbal*, 556 U.S. at 676]; *see also Merklin v. United States*, 788 F.2d 172, 175 (3d Cir. 1986). Instead, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . (emphasis added). "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677 . . . (emphasis added).

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) (some alterations in original).

"A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *Dooley v. Wetzel*, 957

F.3d 366, 374 (3d Cir. 2020) (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting *Rode*, 845 F.2d at 1207)); *see also Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (explaining that Section 1983 defendants "must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which [they] neither participated in nor approved"). Additionally, if a plaintiff seeks to hold a supervisory official liable for unconstitutional acts by her or her subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if [they] participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [their] subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a

supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

Here, Beck does not include any allegations detailing Kendall's personal involvement in any constitutional violation in his complaint. Accordingly, he fails to plead a plausible Section 1983 claim against Kendall, and the Court will dismiss his Section 1983 claim against her.

### 2. Claims Against Rose

Beck asserts that Rose violated his Fourteenth Amendment due process rights by allegedly conducting an inadequate or "sham" investigation into Booth's alleged abuse and use of excessive force. *See* (Doc. 1 at 6–7). He also asserts that Rose's conduct constituted further retaliation in violation of the First Amendment. *See* (*id.* at 7). In both instances, Beck fails to assert plausible Section 1983 claims against Rose.

#### a. Due Process Claims

The Fourteenth Amendment of the United States Constitution provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Cons. amend. XIV, §1. "The core concept of due process is protection against arbitrary government action [and, a]s that concept has developed, it has come to have both substantive

and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). The substantive component "limits what government may do regardless of the fairness of procedures that it employs," *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000), whereas the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property." *Evans*, 645 F.3d at 662.

In this case, Beck fails to plead a plausible due process claim based on Rose's alleged failure to properly investigate his claims of abuse and use of excessive force against Booth because there is no life, liberty, or property interest involved with investigating another person:

> [I]t is well established that "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (per curiam); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Second, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (per curiam) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").

*Hernandez v. Dep't of Corr.*, No. 25-cv-2018, 2025 WL 3207519, at *4 (E.D. Pa. Nov. 17, 2025); *see also Hakala v. Klem*, No. 09-cv-833, 2009 WL

3852787, at *5 (M.D. Pa. Nov. 18, 2019) ("[T]he failure to favorably address, respond to and/or investigate . . . do[es] not implicate a constitutional right." (citing *Bailey v. Palakovich*, No. 06-cv-1640, 2007 WL 1450698, at *3–4 (M.D. Pa. May 14, 2007))). Accordingly, the Court will dismiss Beck's due process claim against Rose based on Rose's alleged failure to adequately investigate Booth's alleged use of force against Beck.

### b. First Amendment Retaliation

Beck alleges that Rose "furthered the retaliation against [him]" by, *inter alia*, ultimately determining that his claims against Booth were unfounded. (Doc. 1 at 7.) To plead a prima facie First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). As for the first element of a plaintiff's prima facie case, the filing of lawsuits and prison grievances constitutes activity protected by the First Amendment. *See id.* (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003))); *Smith v. Mensinger*, 293 F.3d 641,

653 (3d Cir. 2002) (acknowledging its prior holding "that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access to the courts" (citation omitted)); *Allah v. Seiverling*, 229 F.3d 220, 223–25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]" *Mitchell*, 318 F.3d at 530 (second alteration in original) (citations and internal quotation marks omitted); *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights . . ." (citation omitted)). However, to be actionable under Section 1983, the alleged adverse action must be more than *de minimis*. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than *de minimis*" (citations and internal quotation marks omitted)).

And, finally, with respect to the third element of a plaintiff's prima facie case, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove a retaliatory motive." *Watson*, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (footnote omitted).

In this case, there are two significant issues with Beck's retaliation claim against Rose. First, unlike his retaliation claim against Booth, Beck does not specifically plead that Rose retaliated against him for any protected activity. In other words, Beck does not identify the protected activity in which he engaged which led to Rose's alleged deficient investigation, and it is unclear from the complaint whether he alleges that his letter complaining about Booth is the protected activity at issue.

Second, and more importantly, although Beck complains about Rose's investigation into his abuse and excessive force claims, Beck does not actually allege that Rose failed to investigate anything. Instead, he acknowledges that Rose "watched the video of . . . Booth assaulting . . . him" but ultimately determined that Beck's claim was unfounded. (*Id.* at 7.) Thus,

the substance of Beck's allegations demonstrates that he merely disagrees with the outcome of Rose's investigation. Considering that merely denying a grievance is not a sufficiently adverse action for purposes of a First Amendment retaliation claim, *see Owens v. Coleman*, 629 F. App'x 163, 167 (3d Cir. 2015) (unpublished) ("The denial of grievances is not an 'adverse action' for retaliation purposes."); *Lee v. Mason*, No. 23-cv-793, 2024 WL 4341352, at *15 (M.D. Pa. Sept. 27, 2024) ("[W]e agree with the caselaw that the denial of one grievance is not sufficiently adverse to deter an inmate of ordinary firmness from continuing to exercise their [F]irst [A]mendment right."), Rose's ultimate conclusion that Beck's claim of abuse and excessive force was unfounded after conducting an investigation is not sufficiently adverse to deter an inmate of ordinary firmness from continuing to exercise their First Amendment rights. Accordingly, the Court will also dismiss Beck's First Amendment retaliation claim against Rose.

### C. Leave to Amend

Before dismissing all or part of a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer

amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile). Here, the Court finds that it would be futile to grant Beck leave to amend his Fourteenth Amendment due process and First Amendment retaliation claims against Rose. As such, the Court will dismiss those claims with prejudice.

As for any Section 1983 claims against Kendall, it appears that Beck names Kendall as a Defendant in this case simply because she is the Superintendent of SCI Camp Hill, which is an improper basis upon which to seek to hold her liable for any alleged constitutional violation. Nevertheless, the Court will grant Beck an opportunity to replead his claim against Kendall should he possess facts that would establish a plausible Section 1983 claim against her. If Beck chooses not to replead this claim through an amended complaint, the Court will deem his inaction as his desire to proceed on only his Section 1983 First Amendment retaliation and Eighth Amendment excessive force claims against Booth.

## IV. CONCLUSION

For the foregoing reasons, the Court will: (1) grant the IFP Application and allow Beck leave to proceed *in forma pauperis* in this case; (2) dismiss with prejudice Beck's Section 1983 claims against Rose; and (3) dismiss Beck's Section 1983 claim(s) against Kendall without prejudice to him repleading a claim against her through an amended complaint. If Beck does not timely file an amended complaint, this action will proceed on only his Section 1983 First and Eighth Amendment claims against Booth asserted in his complaint. An appropriate Order follows.[3]

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/21/26
26-1958-01

[3] The Order will provide Beck more information on the filing of an amended complaint.